**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

---

IN RE:
THE MCCABE GROUP, A PROFESSIONAL
CORPORATION,
               DEBTOR.

Chapter 7
Case No. 03-17429-WCH

---

JOSEPH BRAUNSTEIN, CHAPTER 7
TRUSTEE,
               PLAINTIFF,

v.

KARREN KELLY MCCABE,
               DEFENDANT.

Adversary Proceeding
No. 07-1191

---

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

    The matters before the Court are the "Motion by Defendant, Karren K. McCabe for Summary

Judgment Dismissing the Complaint" (the "Defendant's Motion") filed by Karren Kelly McCabe

(the "Defendant"), the "Plaintiff's Cross-Motion for Summary Judgment" (the "Cross-Motion") filed

by Joseph Braunstein (the "Trustee"), Chapter 7 trustee of the estate of The McCabe Group, A

Professional Corporation (the "McCabe Group"), the "Plaintiff's Motion to Strike Defendant's

Motion for Summary Judgment for Failure to Comply with MLBR 7056-1" (the "Motion to Strike"),

the "Objection by Defendant Karren Kelly McCabe to [the Motion to Strike]" (the "Objection"), and

"Karren K. McCabe's Opposition to [the Cross-Motion]" (the "Opposition").  Generally, this

1

adversary proceeding arises out of a stipulation of settlement (the "Stipulation") approved in the consolidated cases of the McCabe Group, TMG Holdings, LLC ("Holdings"), a subsidiary of the McCabe Group, and Edwin A. McCabe, the Defendant's spouse and principal of the McCabe Group, prior to their conversion to Chapter 7 from Chapter 11 by which certain insurance companies setoff an amount owed to the McCabe Group for legal fees against a judgment owed jointly and severally by Holdings, Edwin McCabe, and the Defendant and deemed the balance satisfied. Through his Complaint, the Trustee seeks to equitably subrogate the McCabe Group to the right of the insurance companies to collect the judgment from the Defendant. Alternatively, the Trustee contends that the Defendant was unjustly enriched by the forgiveness of this debt to the detriment of the McCabe Group. Each party asserts the other's motion should be denied on procedural grounds and that judgment should enter in their favor as a matter of law. For the reasons set forth below, I will grant the Cross-Motion in part and deny it in part, grant the Defendant's Motion in part and deny it in part, and deny the Motion to Strike.

## II. <u>PROCEDURAL MATTERS</u>

In many respects, the procedural disputes surrounding these matters are more convoluted than the substance of the cross-motions for summary judgment. Because these disputes implicate threshold issues, and because their resolution will impact the contents of the record before me, I will address them first before reciting the facts of this case.

Pursuant to Fed. R. Civ. P. 56, summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law."[1]  "A 'genuine'

issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could

resolve it in favor of the nonmoving party."[2]  Material facts are those having the potential to affect

the outcome of the suit under the applicable law.[3]

The party seeking summary judgment "always bears the initial responsibility . . . of

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on filed, together with the affidavits, if any,' which demonstrate the absence of a genuine issue of

material fact."[4]  The nonmoving party must then "produce 'specific facts, in suitable evidentiary

form, to . . . establish the presence of a trialworthy issue.'"[5]  A trialworthy issue cannot be

established by "conclusory allegations, improbable inferences, and unsupported speculation."[6]  The

Court must view the record in the light most favorable to the nonmoving party and draw all

reasonable inferences in its favor.[7]

---

[1]  Fed. R. Civ. P. 56(c) made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.

[2]  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d. 1, 2 (1st Cir. 1999)(*quoting Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 427 (1st Cir. 1996)).

[3]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-315 (1st Cir. 1995); *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d at 703.

[4]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

[5]  *Triangle Trading Co.*, 200 F.3d at 2 (*quoting Morris v. Gov't Dev't Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)).

[6]  *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)(*quoting Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

[7]  *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

Much of the jurisprudence on Fed. R. Civ. P. 56(c) is derived from two cases decided by the Supreme Court of the United States on the same day, namely, *Anderson v. Liberty Lobby, Inc.*[8] and *Celotex v. Catrett*.[9]  Although typically cited in unison, these cases are factually distinct and address two separate issues regarding motions filed under Rule 56(c).  In *Anderson*, the Supreme Court considered the quantum of evidence required to oppose a motion for summary judgment where the petitioner supported his motion with an affidavit affirmatively producing evidence negating an essential element of the respondent's complaint.[10]  The Defendant refers to this as a "traditional" motion for summary judgment.

In contrast, *Celotex* involved a motion for summary judgment supported only by materials suggesting that the nonmoving party could not produce any evidence as to an essential element of its claim.[11]  On appeal, the United States Court of Appeals for the District of Columbia Circuit stated that the motion was rendered "fatally defective" by the fact that the petitioner "made no effort to adduce any evidence, in the form of affidavits or otherwise, to support its motion."[12]  The Supreme Court reversed, explaining:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a

---

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242.

[9] *Celotex Corp. v. Catrett*, 477 U.S. at 317.

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 246.

[11] *Celotex Corp. v. Catrett*, 477 U.S. at 320.

[12] *Id.* at 322.

4

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

* * *

[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any*", suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits*". The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.[13]

The Supreme Court held that "the burden on the moving party may be discharged by 'showing'- that is, pointing out to the [trial] court- that there is an absence of evidence to support the nonmoving party's case."[14] After such a showing, "Rule 56(e) therefore requires the nonmoving party[, who will bear the burden of proof at trial on a dispositive issue,] to go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[15]

In the present case, the Defendant's Motion is one relying on *Celotex* (a "*Celotex* Motion"), while the Cross-Motion is a "traditional" motion for summary judgment under *Anderson*.  This distinction forms the basis of the dispute embodied in the Motion to Strike and the Objection thereto.

---

[13] *Id.* at 322-323 (emphasis in original).

[14] *Id.* at 325.

[15] *Id.* at 324.

Pursuant to Local Rule 56.1 of the United States District Court for the District of Massachusetts, adopted and made applicable to proceedings in the Bankruptcy Court by Massachusetts Local Bankruptcy Rule ("MLBR") 7056-1, motions for summary judgment must include "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions, and other documentation."[16] Failure to include such a statement constitutes grounds for denial of the motion.[17] Attached to the Defendant's Motion is a document titled "Local Rule 7056-1 Statement in Support of [the Defendant's Motion]" that merely states that a statement of undisputed material facts is unnecessary because, under *Celotex*, the absence of an essential element of the case renders all other facts immaterial. The Trustee moves to strike the Defendant's Motion, arguing that this does not comply with LR, D. Mass. 56.1. The Objection echos the rationale offered in the statement at issue.

Based upon the above-cited passages from *Celotex*, I find the Objection well-taken. To reiterate, the Supreme Court expressly stated that "a complete failure of proof concerning an essential element of the nonmoving party's case *necessarily renders all other facts immaterial*."[18] As such, the absence of any material fact obviates the need for a moving party filing a *Celotex* Motion to provide the statement of undisputed material facts required by LR, D. Mass. 56.1. Therefore, I will deny the Motion to Strike.

Through the Opposition, the Defendant similarly raises two procedural arguments seeking

---

[16] LR, D. Mass 56.1, adopted and made applicable to proceedings in the Bankruptcy Court by MLBR 7056-1.

[17] *Id.*

[18] *Celotex Corp. v. Catrett*, 477 U.S. at 323 (emphasis added).

6

a denial of the Cross-Motion without further consideration on the merits.  First, the Defendant asserts

that the Trustee failed to confer with Defendant's counsel to determine whether the Cross-Motion

would be opposed as required by MLBR 9013-1(b).[19]  Oddly, however, the Defendant concedes that

an email exchange occurred between counsel in which Trustee's counsel stated that "if you

[Defendant's counsel] move for summary judgment, and assert that there are no genuine issues of

material fact, I would probably file a cross-motion."[20]  Without explanation, the Defendant states that

this conditional statement cannot satisfy the requirement set forth in the local rule.  I disagree.  The

purpose of the rule is to encourage parties to confer about proposed motions and that is exactly what

happened.  Although the substance of the motions may not have been discussed with any specificity,

both parties made clear their intention to seek summary judgment and implicitly oppose the other.

Next, the Defendant asserts that the Affidavit of Mark Corner, which was offered by the

Trustee for the purpose of identifying documents attached to the "Plaintiff's Local Rule 56.1

Statement of Undisputed Material Facts of Record" (the "Statement of Undisputed Facts"), is

defective because it does not certify that nine of the twelve exhibits are true and accurate copies.

Moreover, the Defendant contends that Trustee's counsel is not competent to testify with respect to

their authenticity because he lacks personal knowledge.  If correct, these nine exhibits would be

inadmissible, leaving the Statement of Undisputed Facts largely unsupported as required by LR, D.

Mass. 56.1.  Accordingly, the Defendant argues that the Cross-Motion should be denied as being

---

[19] MLBR 9013-1(b) provides that "[b]efore the filing of any motion, except a motion for an emergency hearing under MLBR 9013(h) or a routine motion unlikely to be opposed by any party in interest, the movant shall make a reasonable and good faith effort to determine whether or not the motion is unopposed."

[20] Docket No. 56 at 2 n.1.

unsupported by the statement required by the local rule.

At oral argument, held on November 18, 2009, the Trustee's counsel conceded that he was not competent to testify as to the authenticity of the purported business records of the McCabe Group. Nonetheless, he asserted that if this case were to advance to trial, he would be able to elicit such testimony from Edwin McCabe. Trustee's counsel further argued that his attempt to do just that through the request for admissions process was inappropriately stymied by the Defendant's claim of spousal privilege under Mass. Gen. Laws ch. 233, § 20.[21]

"Documents supporting or opposing summary judgment must be properly authenticated."[22] "To be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'"[23] Fed. R. Civ. P. 56(e) requires that such an affidavit be made on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein.[24] Here, Trustee's counsel concedes that he is not competent to testify as to the authenticity of nine of the exhibits attached to the Statement of Undisputed Facts. Such a concession precludes me from considering exhibits 2, 3, 4, 6, 7, 8, 10, 11,

---

[21] Mass. Gen. Laws ch. 233, § 20 provides in relevant part:

Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal, in court or before a person who has authority to receive evidence, except [subject to exceptions not relevant here] *neither husband nor wife shall testify as to private conversations with the other.*

Mass. Gen. Laws ch. 233, § 20 (emphasis added).

[22] *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000).

[23] *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993) (*quoting* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2722 at 382 (3d ed.1998)).

[24] *Carmona v. Toledo*, 215 F.3d at 131.

and 12 or the paragraphs of the Statement of Undisputed Facts that rely solely upon them.

Contrary to the Defendant's contention, however, the Cross-Motion remains adequately supported. The Opposition did not challenge the authenticity of exhibit 9 to the Statement of Undisputed Facts, namely, the Stipulation.[25] In addition to being the operative document from which the parties' dispute arises, the Stipulation contains fifteen paragraphs of factual recitals regarding the circumstances that gave rise to the Stipulation. Therefore, to the extent that paragraphs 17-28, 31, 34-38, and 40-43 rely on the Stipulation for support, I find that the Statement of Undisputed Facts satisfies the requirements of LR, D. Mass. 56.1.[26]

Although the Defendant was not required to file a statement of undisputed material facts pursuant to LR, D. Mass. 56.1 in the context of her *Celotex* Motion, oppositions to summary judgment must similarly contain a statement of material facts to which the opposing party contends that there exists a genuine issue to be tried with supporting references to the record.[27]  "Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion [for summary judgment] to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."[28]  To this end, the Defendant filed the "Local Rule 7056-1 Statement in Support of [the Opposition]" (the "Statement of Disputed Facts") to controvert the contents of the Statement of Undisputed Facts, thus forming

---

[25] Stipulation, Docket No. 47, Ex. 9 (the "Stipulation").  As this document was downloaded from the Court's records, I find that Trustee's counsel is competent to testify as to its authenticity.

[26] *See* Statement of Undisputed Fact, Docket No. 47.

[27] *Id.*

[28] *Id.*

the basis of the final procedural dispute between the parties.

In the Statement of Disputed Facts, the Defendant identifies twenty-eight statements from the Statement of Undisputed Facts that she asserts are "deficient allegations," and offers only two disputed facts.  The substance of twenty-seven of her asserted "deficient allegations," are that "[s]he has no independent . . .  first-hand knowledge upon which to either admit or deny certain allegations made. . . .  [and] in order to provide a response, either would have to engage in private conversation[s] [sic] with her husband, Edwin A. McCabe . . ., subsequently revealing the substance of those conversations, or reveal the content of such private conversations she may have previously had with him."[29]   Because she cannot be forced to reveal the content of private spousal conversations, she contends that "[j]ustice and equity require that she neither be forced to breach privilege nor suffer a determination that those factual allegations to which she cannot respond be found, by default, to be undisputed, material facts."[30]   In opposition, the Trustee argues that a fact cannot be disqualified from testimony simply because the Defendant has no knowledge of it, if any at all, other than a spousal communication.

Ultimately, I concur with the Trustee for several reasons.  From the outset, the Defendant's claim of a "spousal privilege" is overbroad and disingenuous.  The statute she cites, Mass. Gen. Laws ch. 233, § 20, merely provides that spouses are disqualified from testifying about the content of *private conversations* between them and does not extend to all verbal exchanges between married

---

[29] Statement of Disputed Facts, Docket No. 56, Attachment 1 at 2-3.  The basis of the twenty-eighth assertion of a "deficient allegation" is that the document referenced in the Statement of Undisputed Facts was not attached as an exhibit.  Nonetheless, I fail to see how the Defendant's inability to respond to a fact makes it deficient.

[30] *Id.* at 3.

people.  Based upon the subject matter involved, I fail to see how a private conversation between spouses is implicated as the dispute arises from matters of public record.  Indeed, more than half of the facts to which the Defendant claims a lack of knowledge are recited in the Stipulation to which she was a party.[31]  Even assuming, *arguendo*, that Edwin McCabe is the only person that could provide the Defendant with the information necessary to dispute the Trustee's asserted facts, it is absurd to claim that such information is undiscoverable by her simply because they are married when it would be to anyone else.[32]  To extend the Defendant's reasoning to its (il)logical end, the Defendant must win because the Trustee was disinclined to depose Edwin McCabe himself and thus provide her with the means to defend herself.

Pursuant to both Fed. R. Civ. P. 56(e) and LR, D. Mass. 56.1, when faced with the Cross-Motion, the Defendant had an obligation to come forward with affidavits or other admissible evidence and set forth specific facts showing a genuine issue of material fact for trial.  Instead, the Defendant threw her arms up and said, "I don't know."  Such a response, which offers less than a bare denial, is insufficient to create a dispute of material fact.  This result is not unfair or akin to a default as the Defendant suggests because the Statement of Undisputed Facts must be supported by evidence to be considered.  Moreover, even in the absence of a disputed fact, the Cross-Motion will only be granted if the Trustee demonstrates an entitlement to judgment as a matter of law.

---

[31] Stipulation at ¶¶ A-O.

[32] This is, of course, assuming that such testimony is not subject to some other privilege.

11

## III. <u>BACKGROUND</u>[33]

Prior to the commencement of these proceedings, the McCabe Group operated a law firm.[34] Edwin McCabe was the founder, sole shareholder, president, and sole director of the McCabe Group.[35]  The McCabe Group was the manager of Holdings, a Massachusetts limited liability company, with a 99% membership interest, while Edwin McCabe held the remaining 1% membership interest.[36]

In 2001, Holdings acquired a houseboat with funds supplied by McCabe.[37] McCabe, in turn, obtained those funds from David Harris ("Harris") pursuant to an unsecured promissory note (the "Note") in the principal amount of $200,000.[38]  Edwin McCabe, the Defendant, and Holdings all executed the Note, making them jointly and severally liable for the full amount.[39]  Holdings then chartered the houseboat to the McCabe Group, who then sub-chartered it to the Edwin McCabe and the Defendant to occupy as their principal residence.[40]

From January, 2000, through February, 2003, Edwin McCabe and the McCabe Group

---

[33] I take judicial notice of the docket in the present case, as well as those of related cases before this Court. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 17-19 (1st Cir. 2004) (citations omitted).

[34] Stipulation at ¶ B.

[35] *Id.*

[36] *Id.* at ¶ C.

[37] *Id.* at ¶ D.

[38] *Id.* at ¶ D.

[39] *Id.* at ¶¶ D, 2.

[40] *Id.* at ¶ C.

represented Investors Consolidated Insurance Company, Manhattan Insurance Group, Inc., and Central United Life Insurance Company (the "Insurance Companies") in four related litigation and arbitration matters (collectively, the "Insurance Litigation").[41]   The Insurance Companies subsequently terminated the services of Edwin McCabe and the McCabe Group following a fee dispute March, 2003.[42]   In April, 2003, the parties submitted the dispute to binding arbitration, resulting in an award to Edwin McCabe and the McCabe Group, without allocation, in the amount of $142,355.50 plus interest and costs (the "Arbitration Award").[43]

At the same time the same time the fee dispute was submitted to arbitration, Harris filed a lawsuit in the United States District Court for the Southern District of Texas against Edwin McCabe, the Defendant, and Holdings seeking to enforce the Note.[44]   In August, 2003, Harris assigned all his right, title, and interest in the litigation to the Insurance Companies.[45]   Prior to the final disposition of that litigation, however, Edwin McCabe and the McCabe Group filed petitions under Chapter 11 on September 3, 2003, staying the litigation as it applied him individually.[46]   Nonetheless, in November, 2003, the Insurance Companies obtained a final judgment against the Defendant and Holdings in the amount of $179,261.50 (the "Judgment").[47]   Holdings' Chapter 11 petition followed

---

[41] *Id.* at ¶ E.

[42] *Id.* at ¶ F.

[43] *Id.* at ¶ F.

[44] *Id.* at ¶ I.

[45] *Id.*

[46] *See In re Edwin McCabe*, Case No. 03-17428-WCH; *In re The McCabe Group, A Professional Corporation*, Case No. 03-17429-WCH.

[47] Stipulation at ¶ I.

on February 20, 2004.[48]  I subsequently granted each debtors' motion for joint administration on

April 7, 2004.

On April 20, 2004, Edwin McCabe, the McCabe Group, Holdings, the Defendant, and the

Insurance Companies entered into the Stipulation.  Under the terms of the Stipulation, the Judgment

would be deemed an allowed claim against Edwin McCabe and Holdings in their respective

bankruptcy proceedings, and an undisputed claim against the Defendant, jointly and severally.[49]

Moreover, the Judgment would be deemed fixed and liquidated in the amount of $179,261.50.[50]  The

Stipulation further provided that the Arbitration award would be a set-off against the Judgment as

a full and final settlement and that the "the Insurance Companies shall have no further claim . . .

against [Edwin] McCabe, [the Defendant], Holdings or [the McCabe Group]" (the "Set-off").

Although the Defendant's personal obligation would be satisfied by Set-off, the Stipulation does not

disclose that she provided any consideration to either the Insurance Companies or the McCabe

Group.  In the absence of an objection, I approved the Stipulation on May 14, 2004.[51]

Less than six months later, on November 5, 2004, the jointly administered cases of all three

debtors were voluntarily converted to Chapter 7 and the Trustee was appointed Chapter 7 trustee of

each.[52]  The Trustee, as Chapter 7 trustee of the estate of the McCabe Group, commenced the present

---

[48] *See In re TMG Holdings, LLC*, Case No. 04-11283-WCH.

[49] Stipulation at ¶ 2.

[50] *Id.*

[51] *Id.* at ¶ 3.

[52] Statement of Undisputed Facts at ¶¶ 5, 44.  *See also* Docket No. 294, Case No. 03-17428-WCH.

14

adversary proceeding on May 10, 2007, against the Defendant seeking to recover $179,261.50 under an equitable subrogation or unjust enrichment theory. The Trustee also asks that I determine the proper allocation of the Arbitration Award between Edwin McCabe and the McCabe Group, as well as the amount that the Defendant is liable to the estate of the McCabe Group. After a lengthy discovery process, the Defendant filed the Defendant's Motion on October 15, 2009, which was followed by the Cross-Motion and Motion to Strike on October 26, 2009. The Defendant subsequently filed the Opposition and the Objection on November 1, 2009.

The Trustee's Complaint and Cross-Motion are premised on the allegation that the Set-off damaged the estate of the McCabe Group while providing an undeserved benefit to the Defendant. Such an express assertion is conspicuously absent from the Statement of Undisputed Facts, but is logically inferred from the Trustee's statements that the McCabe Group had no liability on the Judgment but nonetheless surrendered the Arbitration Award for no consideration.[53] The Trustee does, however, state that the McCabe Group "received no benefit" from the Set-off.[54]

In the Statement of Disputed Facts, the Defendant asserts that the Set-off did provide a benefit to the  McCabe Group by increasing the value of the its membership interest in Holdings.[55] In support, she contends that at his deposition, the Trustee conceded that Holdings' schedules reflect

---

[53] Statement of Undisputed Facts at ¶¶ 28, 42, 48. Although the Trustee did not provide a citation to the record to support ¶ 48, I find that it is supported by the Stipulation.

[54] Statement of Undisputed Facts at ¶ 50. While this statement is admittedly unsupported by a citation to the record in the Statement of Undisputed Facts, it appears to be a factual conclusion drawn from the statements that proceeded it.

[55] Statement of Disputed Facts at 12, ¶¶ 1-2.

15

such an increase of "equity."[56]  Specifically, Holdings' Summary of Schedules reflects liabilities in

the amount of $217,876.82, which includes the Judgment in the amount of $179,262.60, and assets

in the amount of $335,800, consisting of the primarily of the $235,000 value of the houseboat and

the $100,000 unliquidated claim for wake damage caused to it.[57]  I note, however, that the Trustee

disputed the Defendant's valuation of Holdings' assets because he believed that the appraisal used

for the houseboat was too old and that counting its full value in addition to the wake damage claim

was duplicative.[58]

I conducted a hearing on these matters on November 18, 2009.  After oral arguments from

both parties, I took all matters under advisement.

## IV. POSITIONS OF THE PARTIES

### The Defendant

In support of the Defendant's Motion, the Defendant states that the Trustee cannot prove all

the elements of either equitable subrogation or unjust enrichment.  First, relying on *Frost v. Porter*

*Leasing Corp.*,[59] she asserts that for equitable subrogation to apply, there must be an entitlement to

recover from two sources.  In the present case, however, the Insurance Companies had no entitlement

to recover from the McCabe Group.  Second, the Defendant argues that subrogation would be

inequitable because the McCabe Group benefitted from the reduction of Holdings' debt as a 99%

---

[56] Docket No. 56, Attachment 5, Document and Affidavit Appendix Vol. III at A.31, A.35-A.40.

[57] *Id.* at A.38-A.43.

[58] *Id.* at A.34.

[59] *Frost v. Porter Leasing Corp.*, 386 Mass. 425, 428, 436 N.E.2d 387 (1982).

member and that recovery by the Trustee would only result in a windfall.  Even if the assets of

Holdings are reduced by $235,000 to remove a double counted asset as the Trustee suggested, the

Defendant contends that the McCabe Group's set-off of $142,355.50 in full satisfaction of the

Judgment resulted in "positive equity" in the approximate amount of $62,185.78.[60]  Moreover, the

Defendant argues that the Trustee cannot prove the elements of unjust enrichment because he cannot

show a detriment to the McCabe Group for precisely this same reason.  Even if I am disinclined to

grant her summary judgment on these counts, the Defendant contends that these facts demonstrate

a genuine issue of material fact precluding the entry of summary judgment in the Trustee's favor.

Finally, with respect to the Trustee's claim for declaratory judgment, the Defendant asserts

that there is no ripe controversy between her and the Trustee because she has no stake in how the

Arbitration Award is allocated between the McCabe Group and Edwin McCabe.  She further notes,

however, that the Chapter 7 trustee of the estate of Edwin McCabe is not a party to this adversary

proceeding and joinder would raise a conflict of interest due to the Trustee's concurrent status as

Chapter 7 trustee of that estate.

The Trustee

Through Count I - Equitable Subrogation, the Trustee asserts that the McCabe Group

succeeded to the rights of Insurance Companies by virtue of having satisfied the Note.  In support,

he states that the McCabe Group was never a party to either the Note or the litigation that resulted

in the Judgment, and therefore was not liable to the Insurance Companies.  Nonetheless, he argues

---

[60] The Defendant reaches this number by first reducing Holdings' total indebtedness of
$217,876.82 by $179,262.60, the satisfied amount of the Judgment, to $38,614.22.  The
Defendant then subtracts this post-Set-off indebtedness from the total value of Holdings' assets,
or $100,800.

17

that the McCabe Group surrendered a liquidated claim against the Insurance Companies and received no consideration or value whatsoever. Indeed, the Trustee contends that the entire benefit of the Set-off flowed to the Defendant and the estates of the Holdings and Edwin McCabe. Therefore, he argues that he, as Chapter 7 trustee of the estate of the McCabe Group, is entitled to step into the shoes of the Insurance Companies and recover the Judgment against the Defendant to prevent her from receiving an unwarranted windfall.

Alternatively, in Count II - Unjust Enrichment, the Trustee relies on roughly the same facts contending that the Set-off unjustly enriched the Defendant to the detriment of the McCabe Group. As stated above, the Statement of Undisputed Facts does not contain any allegation that the estate was damaged, but merely an unsupported statement that it did not receive a benefit. In the Cross-Motion, however, the Trustee concludes the McCabe Group was damaged by the surrender of estate property on account of a debt for which it had no obligation and derived no benefit from the payment. At oral argument, he further argued that it is irrelevant that the McCabe Group is a 99% member in Holdings because they are two different entities. Under such circumstances, the Trustee contends that equity requires that the Defendant not be allowed to retain her benefit at the McCabe Group's expense.

Lastly, pursuant to Count III - Declaratory relief, the Trustee asks that I allocate the full amount of the Arbitration Award to the estate of the McCabe Group. In such an event, I could then find that the Defendant has no obligation to the estate of Edwin McCabe on account of the Set-off and that any funds recoverable by the Trustee from the Defendant are solely the property of the McCabe Group's estate.

## V. DISCUSSION

### A. Equitable Subrogation

"'Subrogation is an old term, rooted in equity,' which today is used to mean 'stand in the shoes of.'"[61]  "[It] occurs where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense for its payment."[62]  In *East Boston Savs. Bank v. Ogan*,[63] the Supreme Judicial Court of Massachusetts set forth five factors that a court must determine for equitable subrogation to apply:

> (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.[64]

---

[61] *Nat'l Shawmut Bank of Boston v. New Amsterdam Cas. Co., Inc.*, 411 F.2d 843, 844 (1st Cir. 1969).  *See also Cruickshank v. Clean Seas Co. (In re Dolphinite, Inc.)*, 346 B.R. 571 (D. Mass. 2006); *Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC)*, No. 08-1030, 2008 WL 3191315 (Bankr. D. Mass. 2008).

[62] In re North American Rubber Thread Co., Inc., 333 B.R. 164, 168-169 (Bankr. D. Mass. 2005) (*citing Rinn v. First Union Nat'l Bank of Md.*, 176 B.R. 401, 407 (D. Md. 1995)).

[63] *East Boston Savs. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331 (1998).

[64] *Id.* at 330 (*citing Mort v. United States*, 86 F.3d 890, 894 (9th Cir. 1996) and *Han v. United States*, 944 F.2d 526, 529 (9th Cir. 1991) (footnote omitted).  As stated above, the Defendant argues that an entitlement to payment from two sources is an additional element of equitable subrogation.  In the *Frost* case, the Supreme Judicial Court stated:

> Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss *is entitled to recover from two sources*, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor or loss victim, called the subrogor) against the third, primarily responsible party.

386 Mass. at 426-427 (emphasis added).  Having reviewed the case, I find that the Supreme Judicial Court was merely explaining the general concept of implied subrogation in an insurance context and not enunciating a necessary element.  This reading is supported by the fact that such

19

The Supreme Judicial Court further explained that:

> Parties may be considered volunteers if, in making a payment, they have no interest of their own to protect, they act without any obligation, legal or moral, and they act without being requested to do so by the person liable on the original obligation.[65]

Ultimately, equitable subrogation "is 'a broad equitable remedy' and, depending on the individual case, it may apply even where one or more of these factors is absent."[66]   Nonetheless, equitable subrogation exists to prevent an unwarranted windfalls and  "[d]uplicative recover[ies] [are] 'a result which the law has never looked upon with favor.'"[67]   Indeed, the Supreme Judicial Court noted that in applying Massachusetts subrogation theory, the United States Court of Appeals for the First Circuit "termed [it] to be one of 'unjust enrichment' because of the importance . . . placed on balancing the interests of all [parties]."[68]

In the present case, the Set-off meets most of the criteria set forth in *Ogan* for equitable subrogation.  Addressing the third and fourth factors first, it is undisputed that the McCabe Group was not liable to the Insurance Companies on account of either the Note or the Judgment and that its surrender of the Arbitration Award satisfied the Judgment in full.  With respect to the second

---

a factor (or element) was not referenced in the *Ogan* case, which postdated *Frost* by sixteen years.

[65] *Id.* (*quoting Mort v. United States*, 86 F.3d at 894).  *See GMAC Mortgage Corp. v. Bayko*, No. 05-11746-GAO, 2007 WL 4365357 *2 (D. Mass. Dec. 12, 2007).

[66] *East Boston Savs. Bank v. Ogan*, 428 Mass. at 330 (*citing Mort v. United States*, 86 F.3d at 894).

[67] *Frost v. Porter Leasing Corp.*, 386 Mass. at 428 (*quoting Travelers Ins. Co. v. Graye*, 358 Mass. 238, 241 263 N.E.2d 442 (1970)).

[68] *East Boston Savs. Bank v. Ogan*, 428 Mass. at 334 n. 2 (*citing Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1236-1238 (1st Cir.1996)).

factor, I find that the McCabe Group was not a volunteer because it was under the management of Edwin McCabe as a debtor-in-possession at the time the Set-off occurred.  Such involvement in the McCabe Group's decision making by a party jointly and severally liable on the Judgment is tantamount to a request of behalf of the primary obligor.  Although it is unclear why the McCabe Group would surrender a claim in satisfaction of debt for which it is not liable, aside from the involvement of Edwin McCabe, arguably, it may have served to protect the McCabe Group's interest in Holdings and/or the houseboat.

Generally, the Defendant does not dispute the implication of these factors as applied to this case and instead argues that subrogation under these circumstances would be inequitable because the McCabe Group received the benefit of the Set-off as an increase in the "equity" in Holdings.  I find, however, that the term "equity" is an improper characterization and misleading under these circumstances.  As a member of a limited liability company, the McCabe Group held a share in the company's profits and losses,[69] but incurred no liability on account of the company's obligations.[70] This means that the value of the McCabe Group's membership interest in Holdings could only be a positive number.  Put simply, if Holdings' liabilities exceeded its assets prior to the Set-off, the McCabe Group's interest was worth *nothing*, and if they did not, than the interest was worth

---

[69] *See* Mass. Gen. Laws ch. 156C, § 29 ("The profits and losses of a limited liability company shall be allocated among the members . . . ").

[70] *See* Mass. Gen. Laws ch. 156C, § 22 ("Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.").

*something*.  Applying these principles to the calculation proposed by the Defendant, the McCabe Group surrendered an award in the amount of $142,355.50 and increased the value of its membership interest in Holdings to a portion of $62,185.78.  Even if the McCabe Group held the entire membership interest in Holdings, $62,185.78 is less than the $142,355.50 it surrendered.

Ultimately, I agree with the Trustee and find this argument to be a red herring because Holdings' net worth would necessarily have increased from the satisfaction of the Judgment, regardless of who made the payment.  This, in turn, would have translated into an increase in the value of the membership interests in the company.  But for the Set-off, the McCabe Group could otherwise have enjoyed both the increase in the value of its membership interest in Holdings and the full amount of the Arbitration Award.  Therefore, such a value increase cannot be counted towards the amount it surrendered.

Nonetheless, I find that it would be inequitable for the Trustee to recover $179,262.60, constituting the full amount of the Judgment, where the estate surrendered a lesser amount.  Under these circumstances, any amount above $142,355.50 would constitute an "unwarranted windfall."  Otherwise, I conclude that the Massachusetts theory of equitable subrogation applies and that the Trustee may recover the full amount the estate of the McCabe Group surrendered to the Insurance Companies pursuant to the Stipulation from the Defendant.  Therefore, I will enter judgment in favor of the Trustee on Count I of the Complaint.

    B. Unjust Enrichment

As suggested above by the First Circuit, equitable subrogation theory under Massachusetts law is similar in many respects to theories of unjust enrichment.  "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and

22

good conscience.'"[71]  As such, it "is a theory of equitable recovery, not a separate cause of action."[72]

To demonstrate unjust enrichment, the plaintiff must show: "(1) an enrichment, (2) an

impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of

justification and (5) the absence of a remedy provided by law."[73]

In the present case, the application of these elements to the facts are fairly straightforward.

The Defendant received the benefit in the amount of $179,262.60 from the satisfaction of her

personal obligation on the Judgment by the McCabe Group.  The McCabe Group had no liability

with respect to the Judgment, but nevertheless surrendered the Arbitration Award in the amount of

$142,355.50 to extinguish the obligation.  For the reasons stated above, I again dismiss the

Defendant's argument that the McCabe Group received corresponding benefit from the Set-off and

find that it suffered a detriment in the amount of the Arbitration Award.  The Defendant's

enrichment, to the extent of the Arbitration Award, is unjustified as she provided no consideration

---

[71] *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340, 347 (D. Mass. 1982) (*quoting* 66 Am.Jur.2d Restitution and Implied Contracts § 3 (1962)).  *See Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171 (2005).

[72]  *Smith v. Jenkins*, 626 F.Supp.2d 155, 170 (D. Mass. 2009) (*citing Lopes v. Commonwealth*, 442 Mass. 170, 179, 811 N.E.2d 501 (2004)).

[73] *Id.* at 171 (*quoting LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 294-295 (D. Del. 2000)). *See Keller v. O'Brien*, 425 Mass. 774, 778, 683 N.E.2d 1026 (1997); *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029 (1985); *Nat'l Shawmut Bank v. Fidelity Mut. Life Ins. Co.*, 318 Mass. 142, 146, 61 N.E.2d 18 (1945); *Sutton v. Valois*, 66 Mass. App. Ct. 258, 267, 846 N.E.2d 1171 (2006); *Santagate v. Tower*, 64 Mass. App. Ct. at 329; *Stevens v. Nagle*, 64 Mass. App. Ct. 136, 141, 831 N.E.2d 935 (2005); *Cox v. Cox*, 56 Mass. App. Ct. 864, 780 N.E.2d 951 (2002).

for the substantial benefit she received.[74]    As the Trustee is unable contest the terms of the Stipulation at this time, his only remedies are equitable.  Accordingly, I will enter judgment in favor of the Trustee on Count II of the Complaint.

C. Declaratory Judgment

Through Count III, the Trustee seeks a declaration that the Arbitration Award was entirely property of the estate of the McCabe Group such that the estate of Edwin McCabe would not be entitled to share in any recovery against the Defendant.  The Federal Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . .[75]

There must also be "[s]ome indication that the controversy has a concrete impact on the parties is also necessary before a case is ripe for adjudication."[76]

Here, the Defendant correctly notes that Count III does not implicate any controversy between herself and the Trustee.  To the extent that the Trustee has prevailed on Counts I and II, the McCabe Group may recover the amount of $142,355.50 from the Defendant.  Beyond her obligation to the McCabe Group, she has no stake in whether that amount must be shared with the estate of

---

[74] As the Defendant provided no consideration for the Stipulation and is not a Debtor before this Court, it is curious that the Insurance Companies released her instead of pursuing the balance of the Judgment against her solely.

[75] 28 U.S.C. § 2201(a).

[76] *Pustell v. Lynn Public Schools*, 18 F.3d 50, 52 (1st Cir. 1994) (*citing Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Edwin McCabe.  Ultimately, the controversy the Trustee seeks resolution to is between the estates of the McCabe Group and Edwin McCabe.  I note, however, that the estate of Edwin McCabe is not a party to this adversary proceeding.[77]  Therefore, I will grant summary judgment in favor of the Defendant on Count III.

## VI. **CONCLUSION**

In light of the foregoing, I will enter an order granting the Cross-Motion with respect to Counts I and II of the Complaint and denying it with respect to Count III, granting the Defendant's Motion with respect to Count III and denying it with respect to Counts I and II, and denying the Motion to Strike.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: January 22, 2010

---

[77] I need not reach the issue of whether the Trustee's dual status as the Chapter 7 trustee of both estates represents a conflict of interest.